HARRY BROUS, Plaintiff, v. IMPERIAL ASSURANCE COMPANY, Defendant.

Supreme Court, New York County, May 24, 1927.

Insurance — riot insurance — action on policy covering damages caused to goods in riot attending strike — during strike in plaintiff's plant six men entered plant, threatened to kill three employees and damaged goods — action of six men constituted riot — plaintiff may recover.

The plaintiff is entitled to recover upon a policy of riot insurance which insured the plaintiff against loss from riot or riot attending a strike, since it appears that while some of plaintiff's employees were on strike six men entered the plant, threatened three employees with death and seriously damaged plaintiff's goods by cutting them and by throwing acid on them. The action of the six intruders constituted a riot.

ACTION on a riot and civil commotion policy of insurance.

*Alfred B. Nathan* and *S. Howard Imbrey,* for the plaintiff.

*Cardozo & Nathan,* for the defendant.

WALSH, J. This action is brought upon a policy of insurance issued by defendant to plaintiff for a term of one year, commencing October 5, 1926. The policy is what is known as a riot and civil commotion policy and, among other things, insures plaintiff against direct loss or damage caused to property contained in the premises 1370 Broadway, New York city, by (1) riot; (2) riot attending strike. Plaintiff is a manufacturer of dresses. He occupies part of a loft at the above address. During the pendency of a strike called by the garment workers' union some of his employees, who were members of the union, were on strike. On the morning of December 6, 1926, while the strike was in progress, three employees of the plaintiff arrived, as usual, at about eight o'clock. Shortly thereafter two men came from the front elevator entrance and asked, " Where is Joe? " an employee of plaintiff. One of the plaintiff's employees said: " What do you want with Joe? " Whereupon these two men, by gesture indicating that they were armed, such gesture consisting of each of said men having his right hand in his right-hand coat pocket and pointing same toward these three employees, directed said employees to go into a small cage or inclosure " before we blow your brains out." The employees entered the inclosure. The two men said nothing further, but remained in front of the entrance to said inclosure. Very shortly thereafter four more men came from the front entrance. These men went into the stockroom of defendant, adjoining the part of the loft in which the employees were then confined under guard of the other two. The four men said nothing, but walked around the stockroom, where they remained about ten minutes, when they left by way of the front entrance. Immediately thereafter the two men who had been guarding the three employees said to them: " Stay there or we will blow your heads off," and then left by the rear entrance. About ten minutes after they had gone the employees left the inclosure where they had been confined and went into the stockroom. They then saw finished garments, merchandise of plaintiff, all cut, with acid on them, lying on the floor. It is conceded that these marauders damaged plaintiff's property and that the amount of such damage is $9,660. The only question is whether the damage so sustained was caused by a riot or a riot attending a strike. It seems that, in this case at least, there is no distinction between the two clauses. From the foregoing facts it is apparent, and I so find, that there was a common intent on the part of the six intruders above mentioned to

accomplish an unlawful act, to wit, the destruction of the property of plaintiff; that in furtherance of such intent, and acting in concert, they unlawfully trespassed upon and assembled in plaintiff's premises, and after terrorizing plaintiff's employees by indicating that they were armed and threatening to kill them if they offered any resistance, the said invaders destroyed plaintiff's property. This in my opinion, constitutes a riot within the meaning of such word as defined in the dictionaries, under the common law, in the Penal Law of this State and as construed and interpreted in the cases. The Century Dictionary defines the word " riot " as follows: " In law, an unlawful assembly which has actually begun to execute the purpose for which it assembled by a breach of the peace, and to the terror of the public * * *. A riot cannot take place unless three persons at least are present." Riot is similarly defined in Stephen's Digest of Criminal Law (7th ed. 1926) and, as illustrating what constitutes a riot, it is there stated that where A, B and C meet at A's house for the purpose of beating D and thereupon go to D's house and make an attack upon him, this constitutes a riot. In Blackstone's Commentaries (Vol. 4, p. 146) riot is given the following definition: "A riot is where three or more actually do an unlawful act of violence, either with or without common cause or quarrel; as if they beat a man, or hunt and kill game in another's park, chase, warren or liberty, or do any other unlawful act with force and violence, or even do a lawful act, as removing a nuisance in a violent and tumultuous manner." " Riot defined. Whenever three or more persons, having assembled for any purpose, disturb the public peace, by using force or violence to any other person, or to property, or threaten or attempt to commit such disturbance, or to do an unlawful act by the use of force or violence, accompanied with the power of immediate execution of such threat or attempt, they are guilty of riot." (Penal Law, § 2090.) In *Marshall* v. *City of Buffalo* (50 App. Div. 149; 63 id. 603) the court, after quoting the provisions of section 449 of the Penal Code, now section 2090 of the Penal Law, and also Blackstone's definition of the word " riot," says: " 'A riot,' says Bishop (2 Crim. Law, § 1143), ' is such disorderly conduct, in three or more assembled persons actually accomplishing some object as is calculated to terrify others.' According to Stroud (Judicial Dictionary) and to Burrill (Law Dictionary) an unlawful act committed with force and violence by three or more constitutes a riot. In *Commonwealth* v. *Runnels* (10 Mass. 518) PARKER, J., observed: ' The phrase *in terrorem populi* is used by Hawkins as descriptive of the offense denominated a *riot;* but it is clear that there may be a riot without terrifying any one. Lord HOLT has given a dis-

tinc ion, founded in good sense, between those indictments in which the words *in terrorem populi* are essential and those wherein they may be omitted. He says that in indictments for that species of riots which consist in going about armed, etc., without committing any act, the words aforesaid are necessary, because the offense consists in terrifying the public; but in those riots in which an unlawful act is *committed* the words are useless. And upon consulting the precedents we find this distinction accurately observed; there being no averment of terror where an actual violence is charged to have been riotously committed. * * * To disturb another in the enjoyment of a lawful right is a trespass; and if it is done by numbers unlawfully combined, the same act is a riot.' " The second trial of the *Marshall* case resulted in a verdict being directed for the defendant, with exceptions to be heard in the first instance by the Appellate Division. In sustaining the exceptions and granting a new trial, the Appellate Division said (63 App. Div. 603): " The evidence on the part of the defendant was addressed simply to showing that there was no actual fighting or unnecessary noise or rioting on the part of the persons who destroyed this property. There is no dispute as to the fact that it was destroyed unlawfully. * * * The only effect of the evidence offered by the defendant so far as we can see was that the mob proceeded to accomplish the purpose for which they were gathered there as peaceably as might be in the absence of any opposition to their course. This, however, we do not regard as very material evidence, when it appears that no attempt was made by the police or any one else to prevent the carrying out by the mob of their intention." In *Adamson* v. *City of New York* (188 N. Y. 255) the court quoted the definition of the term " riot " as used in the Penal Code and as defined by Hawkins and Greenleaf. It held that the facts before it did not establish a riot for the reason that the acts complained of " indicated any other purpose than that of proceeding with force or violence to accomplish their purpose, acting in concert and mutually assisting one another against any one who should oppose them." In distinguishing the facts before it from those established in the *Marshall* and other cases in which it was held the acts constituted a riot, the court said: " In each of these cases there was present an element of concerted action and violence in attacking those who offered resistance to the execution of an unlawful plan, or of a large and tumultuous gathering against public peace and order which carried out its unlawful destruction of property with preparation and deliberation, or of unlawful conduct calculated to inspire terror and, therefore, coming within the particular statutory definition there applicable, and none of which

features are here present." Not only are the purposes lacking in the *Adamson* case here present, but all the elements necessary to constitute a riot, under the definitions heretofore given, have been established. Judgment directed for plaintiff for $9,660, with interest from February 7, 1927.